UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA

         -against-                    19-CR-449-03 (NSR)

ANTHONY MOLINA,

              *Defendant.*
-----------------------------------------------------------X


## MEMORANDUM IN SUPPORT OF
## THE PENDING PLEA AGREEMENT


                        Richard Levitt
                        Zach Segal
                        Levitt & Kaizer
                        40 Fulton Street, 17th Floor
                        New York, N.Y. 10038
                        (212) 480-4000
                        rlevitt@landklaw.com

                        *Attorneys for Anthony Molina*


November 13, 2023

## <u>Table of Contents</u>

Introduction .................................................................................................1

Argument Summary ...................................................................................3

Argument ....................................................................................................4

    A. The Government's Attempt to Revoke Mr. Molina's Plea should be
       rejected as improper ..........................................................................3

    B. The Court's rejection of Mr. Molina and the Government's plea
       agreement would be an abuse of whatever discretion the Court has
       under the instant circumstances. ..................................................5

        1. The Court may not reject the plea agreement based on its
           credibility finding regarding a fact not essential to a sufficient
           Rule 11 plea...................................................................................8

        2. In any event, the Court lacks a factual basis to conclude Molina
           was not being truthful when he said the weapon he possessed
           was a pellet gun ..........................................................................15

           a.    The codefendant's pleas ....................................................15

           b.    The trial evidence.............................................................17

Conclusion.................................................................................................18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,            19-CR-449-03 (NSR)

        -against-

ANTHONY MOLINA,

        *Defendant.*
-------------------------------------------------------------X

## MEMORANDUM IN SUPPORT OF
## THE PENDING PLEA AGREEMENT

Mr. Molina appeared in court last Wednesday (Nov. 8) to enter a plea of guilty, pursuant to a plea agreement, to a superseding Information charging him with conspiring to commit two Hobbs Act robberies, in violation of 18 U.S.C. § 371. *See* Exhibit A, Superseding Information. After the Court ascertained that Mr. Molina was acting knowingly and voluntarily, it asked him what he did that makes him guilty, and he responded:

> From in or about August 2017 up to and including February 15th, 2019, in the Southern District of New York and elsewhere, I agreed with others to rob a phone store in New Milford, Connecticut and a phone store in Mahopac, New York, that sold goods which traveled in interstate commerce and in fact did so.

*See* Exhibit B, 11/08/2023 Hearing Trans., at 32.

The Court then asked Mr. Molina to identify his co-conspirators and he did. *Id.* at 33.

The Court then asked Molina what force was used during the robberies, and he responded, "we brandished what appeared to be a firearm and took the goods which traveled in interstate commerce." *Id.* at 34.

1

This allocution unquestionably was sufficient to establish the elements of the charged conspiracy because Mr. Molina acknowledged he conspired in New York and elsewhere to rob two stores and that he committed an overt act in furtherance of the conspiracy by entering the stores, stealing the phones, and brandishing what appeared to be a firearm. The Government agreed that Mr. Molina's allocution was sufficient. *Id*. at 44-45 ("Your Honor, the law says that Your Honor doesn't have to believe everything he says as long as what he says truthfully is in and of itself enough to hit the elements. … Your Honor definitely has the discretion to accept it on the basis of what he said.")

The Court then asked Mr. Molina whether the firearm was real, and he responded it was a pellet gun (*id*. at 34), which the Court said it did not believe. *Id*. at 34-35. Notwithstanding that Mr. Molina's allocution fully satisfied Rule 11's pleading requirements, the Court said it would reject the plea because it did not believe the weapon he used was a pellet gun rather than a "firearm." However, the Court directed the parties to file memorandums addressing whether the Court has authority to reject the plea, *i.e.*, whether "in the exercise of my discretion, I could -- I could not accept -- choose not to accept your client's allocution on the basis that I believe that he's being less than truthful." *Id*. at 45.

Nonetheless, on Sunday November 12, 2023, the Government informed the undersigned that it was revoking the plea agreement offered to Mr. Molina. *See* Exhibit C, Gov. Ltr. Revoking Plea. Below we address the issue the Court directed the parties to brief, *i.e.*, why the rejection of Mr. Molina's plea would be an abuse of

whatever discretion the Court has in this matter. First, however, we address why the Government has no right to revoke the plea and ask the Court to direct the Government to file by Wednesday at 5:00 pm its memorandum regarding the Court's discretion, if any, to reject Mr. Molina's plea.

## **Argument Summary**

As we urge below, a court abuses its discretion when it rejects a plea agreement simply because it disbelieves defendant's testimony regarding a fact not essential to satisfying Rule 11's pleading requirements.

Here, whether the weapon Mr. Molina brandished met the definition of "firearm" was irrelevant to whether his plea satisfied Rule 11.

Rejection of the plea agreement because the Court believed the weapon displayed by Mr. Molina was a genuine firearm and not a pellet gun would be an abuse of discretion for the additional reason that the Court had an insufficient factual basis to conclude that Molina was lying about possessing a pellet gun rather than a "firearm." As we explain below, neither the Court's presence at Mr. Molina's trial, nor the co-defendants' guilty pleas justify the Court's conclusion that Mr. Molina was lying. Finally, the Government's revocation of the plea agreement was improper because plea agreements are construed in favor of a criminal defendant and the Government's reservation of the right to revoke for any reason expired on November 8, 2023. Additionally, Mr. Molina has already relied upon the agreement when he waived his Fifth Amendment rights and admitted he conspired to commit two Hobbs Act robberies.

We therefore respectfully ask the Court to accept the plea agreement.

**Argument**

**A. <u>The Government's Attempt to Revoke Mr. Molina's Plea should be rejected as improper.</u>**

It is axiomatic that,

> courts construe plea agreements strictly against the Government. This is done for a variety of reasons, including the fact that the Government is usually the party that drafts the agreement, and the fact that the Government ordinarily has certain awesome advantages in bargaining power.

*United States v. Ready*, 82 F.3d 551, 559 (2d Cir. 1996).

On November 1, 2023, the Government formally transmitted its proposed plea offer to the undersigned. *See* Exhibit D, Transmittal Ltr. Unlike the plea agreement itself, which made no mention of the Government's revocation rights, the transmittal letter provided, in relevant part:

> This plea offer expires on November 8, 2023, and may be revoked by the Government, in its sole discretion, at any time before its expiration.

*Id*. at 1. The only provision in the plea agreement which discussed the circumstances under which the Government's duties under the plea were discharged appeared on page 10, which allowed it to reinstate the charges dismissed pursuant to the plea agreement if the conviction obtained by the plea agreement were subsequently vacated. *See* Exhibit E, Plea Agreement, at 10.

On November 8, the parties appeared before the Court to proceed with the plea. *See* Exhibit B, 11/08/2023 Hearing Trans., at 2 ("It's my understanding that the parties have reached a plea disposition, a plea agreement, and therefore the parties

are foregoing the need for a Franks hearing, correct? MR. MAIMIN: That's correct.")
After arraigning Mr. Molina on the Superseding Information, and confirming he was
waiving his right to indictment, the Court proceeded to the plea agreement and noted,

> THE COURT: All right. So, the record should reflect that, on page 11, it
> bears the signature of the U.S. Attorney's Office, one U.S. Attorney
> being Michael Maimin, the Chief Perry A. Carbone, and it also bears the
> signature of Mr. Molina and that of Mr. Richard Levitt.

*Id.* at 2. At no point before or during the November 8 proceedings did the Government
revoke the plea agreement. To the contrary, the Government proceeded with the plea
proceeding pursuant to the agreement and affirmatively told the Court that Mr.
Molina's allocution was sufficient to be accepted. *Id.* at 45 ("Your Honor definitely has
the discretion to accept it on the basis of what he said."). It was only on November 12,
2023, four days after Mr. Molina and the Government appeared before the Court to
effectuate the contractual agreement both parties signed that the Government sought
to withdraw therefrom. This the Government may not do.

The Second Circuit's decision in *United States v. Padilla*, 186 F.3d 136 (2d Cir.
1999) is instructive. In *Padilla*, the defendant and the Government had entered into
a plea agreement providing that if the defendant cooperated with the Government,
the Government would file a motion of his behalf prior to sentencing pursuant to
USSG §5K1.1. The defendant, however, never appeared for sentencing and so the
Government moved to withdraw its §5K1.1 motion, which the district court granted.
On appeal, the Second Circuit agreed with the defendant that this revocation was
improper, explaining,

> The plea agreement was silent as to whether the Government could withdraw the Section 5K1.1 and 18 U.S.C. § 3553(e) motion while it specifically enumerated the Government's rights upon Padilla's committing further crimes, or otherwise violating the agreement. "The Government [is] responsible for imprecisions or ambiguities in the agreement." *Dixon*, 998 F.2d at 230. We therefore hold that allowing the Government to withdraw the motion violated the plea agreement and was erroneous.

*United States v. Padilla*, 186 F.3d 136, 142 (2d Cir. 1999).

Here, like in *Padilla*, the Government was free to include in the agreement any language it desired to define its right to revoke the plea agreement. It in fact did not include any such language in the agreement,[1] which includes an integration clause:

> Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Exhibit E, Plea Agreement, at 10-11. Moreover, even if the language in the transmittal letter (Exhibit D) were given effect, it would not permit the Government to withdraw the plea agreement. That letter provides, "This plea offer expires on November 8, 2023, and may be revoked by the Government, in its sole discretion, at any time before its expiration." The Government, however, did not revoke the agreement and instead continued to proceed upon its terms, and Mr. Molina relied upon its continued viability when he waived his Fifth Amendment rights, expressed his intention to plead guilty, and allocuted before the Court. Under these

---

[1] We note that the agreement does provide that the Government's duties pursuant to the plea agreement would be discharged if Mr. Molina's conviction pursuant to the plea was later vacated. *See* Exhibit E, Plea Agreement, at 10.

circumstances the Government has no right to now renege on the agreement even if it had expired on the 8th:

> The law is clear that even where an agreement expires by its terms, if the parties continue to perform as before, "an implication arises that they have mutually assented to a new-contract containing the same provisions as the old." *Martin v. Campanaro,* 156 F.2d 127, 129 (2d Cir.), *cert. denied,* 329 U.S. 759, 67 S.Ct. 112, 91 L.Ed. 654 (1946). *Accord, Teachers Insurance Annuity Ass'n of America v. Walter Kidde Co.,* No. 76 Civ. 5128 (CSH), slip op. (S.D.N.Y. March 15, 1978), reargument denied No. 76 Civ. 5128 (CSH), slip op. (S.D.N.Y. July 28, 1978); *Gannett Co. v. MCP, Inc.,* No. 86 Civ. 0473 (RWS), slip op., 1986 WL 12523 (available on Lexis) (S.D.N.Y. Oct. 24, 1986).

*Teachers Annuity v. Ormesa Geothermal*, 791 F. Supp. 401, 415 n.4 (S.D.N.Y. 1991). Indeed, the Government knew full well that it could not receive an executed copy of the agreement before the 8th because Mr. Molina is incarcerated and was produced the 8th. Thus, under any circumstances, the Government is now bound by the terms of the agreement with Mr. Molina and its effort to renege should therefore be rejected.

**B. The Court's <u>rejection of Mr. Molina and the Government's plea agreement would be an abuse of whatever discretion the Court has under the instant circumstances.</u>**

We agree that a court may reject a plea agreement in the sound exercise of its discretion. *See* Fed. R. Crim. P. 11(b). A court's discretion, however, would be abused if the rejection is based on a finding that the defendant was untruthful regarding a matter not essential to an adequate Rule 11 plea, and based its credibility finding on insufficient evidence.

1. **The Court may not reject the plea agreement based on its credibility finding regarding a fact not essential to a sufficient Rule 11 plea.**

The Second Circuit has described a plea bargain as "an indispensable tool for the administration of criminal law" and has "consistently endorsed the use of plea agreements as necessary to the operation of the courts within this Circuit." *United States v. Torres-Echavarria*, 129 F.3d 692, 695 (2d Cir. 1997). But, given the sacred rights a criminal defendant forfeits by pleading guilty, Rule 11(b) of the Federal Rules of Criminal Procedure "ensure[s] that a guilty plea is knowing and voluntary, by laying out the steps a trial judge must take before accepting such a plea." *United States v. Vonn*, 535 U.S. 55, 58 (2002); *see also* Fed. R. Crim. P. 11(b)(1) (requiring the "the court...inform the defendant of, and determine that the defendant understands[]" fifteen specific things about her rights and the nature of the plea.). Further, Rule 11(b) "provides that the court should not enter judgment on a plea of guilty unless it is satisfied that there is a factual basis for the plea[.]" *United States v. Severino*, 800 F.2d 42, 45 (2d Cir. 1986).

Ensuring there is a factual basis for a plea is a necessary function "to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.' Fed.R.Crim.P. 11 advisory committee's note (1966 Amendment)." *United States v. Washington*, 969 F.2d 1073, 1077 (D.C. Cir. 1992). To find a factual basis, the court must "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997); *United States v.*

*Rea-Beltran*, 457 F.3d 695, 701 (7th Cir. 2006) (the factual basis contemplated by Rule 11 is established when the defendant "'describe[s] the conduct that gave rise to the charge.' Fed.R.Crim.P. 11 advisory committee's note (1974 Amendments) (quoting *Santobello,* 404 U.S. at 261[.]") In other words, "to establish a factual basis for a plea, there must be adequate factual support for each element of the crime to which the plea is offered." *Rea-Beltran*, 457 F.3d at 701 (7th Cir. 2006); *Washington*, 969 F.2d at 1078 (D.C. Cir. 1992) ("since Gedde was willing to proffer all facts necessary to establish the elements of a distribution offense, his plea had a sound factual basis as required by Rule 11.") "The court may rely on defendant's own admissions, information from the government, or other information appropriate to the specific case" to make this finding. *United States v. Andrades*, 169 F.3d 131, 136 (2d Cir. 1999).

A district court judge is not required to "accept every constitutionally valid [i.e., knowing, voluntary, and intelligent] guilty plea merely because a defendant wishes so to plead," *Severino*, *supra* quoting *North Carolina v. Alford*, 400 U.S. 25, 38 n. 11 (1970), and "may reject a plea in exercise of sound judicial discretion," *Id. quoting Santobello v. New York*, 404 U.S. 257, 262 (1971). Whether a court improperly rejected a plea is reviewed for abuse of discretion. *Id*. Although "the Rule does not indicate whether, when [] a factual basis has been established, the court has discretion nonetheless to reject the plea[,]" *Severino*, *supra* at 45, the Second Circuit has said "the relevant inquiry … in determining whether the trial judge abused his discretion must focus upon what was before the judge at the time he was asked to

accept [defendant'] guilty plea. Fed.R.Crim.P. 11*; McCarthy v. United States*, 394 U.S. 459, 471 (1969)[.]" *United States v. Navedo*, 516 F.2d 293, 297 (2d Cir. 1975). If the defendant's allocution does not satisfy the judge that the statutory elements have been met, "the court may look to other evidence in the recorded proceedings before it and determine that there is a factual basis for the plea[,]" and if there is, "***the plea should not be rejected***." *Severino*, *supra*, at 46 (emphasis added).

Because the inquiry necessarily concerns whether the defendant's allocution satisfies the statutory elements of the offense for which she is pleading guilty, a district court abuses its discretion in rejecting a plea based on a finding that the defendant's allocution falsely represented facts not essential to the relevant statutory elements. *See e.g., United States v. Washington*, 969 F.2d 1073 (D.C. Cir. 1992) (court abused discretion by rejecting plea to possession with intent to distribute narcotics where defendant would not name co-defendant as co-conspirator because allocution recited elements of charge and defendant was not pleading guilty to conspiracy); *United States v. Maddox*, 48 F.3d 555 (D.C. Cir. 1995) (court abused discretion in rejecting plea where it relied on false statements made during first allocution, which was properly rejected, but refused to allow defendant to correct misstatements); *United States v. Rea-Beltran*, 457 F.3d 695 (7th Cir. 2006) (court made error of law and thus abused discretion when it rejected plea because it believed defendant falsely allocuted to non-essential element); *United States v. Mendoza*, 280 F. App'x 589 (9th Cir. 2008) (same). However, a court's abuse of discretion in rejecting a plea is subject to harmless error analysis. *Compare Washington*, 969 F.2d at 1079 (erroneous

rejection of plea harmless because defendant was convicted of same offense and faced same sentence) *with Rae-Beltran*, 457 F.3d at 703 ("Having incurred an additional conviction because his plea attempts were frustrated, the verdict resulting from the jury trial cannot stand, regardless of how fairly the proceedings were conducted."). The remedy is reinstating the wrongfully rejected plea, with all its terms. *See United States v. Mendoza*, 280 F. App'x 589, 590 (9th Cir. 2008) ("We will therefore restore Mendoza to the position he would have been in had his plea not been erroneously rejected.")

Here, Mr. Molina was arraigned on a Superseding Information charging a violation of 18 U.S.C. § 371, a conspiracy to "commit one or more offenses against the United States[.]" *See* Exhibit A, Superseding Information, at 1. The offenses against the United States Mr. Molina conspired to commit were two Hobbs Act Robberies in violation of 18 U.S.C. § 1951. *Id.* As recited above, Mr. Molina's allocution conceded facts that established the charged offense: he admitted entering into an agreement with others to rob two stores and he admitted he in fact did so. The crime of conspiracy was, of course, complete when Mr. Molina and others entered into the conspiracy and committed an overt act and here, he admitted to stealing the goods and committing the robberies.

Regardless of whether this Court believes Mr. Molina falsely claimed he used a pellet gun during the robberies as opposed to a "firearm," it must nonetheless accept Mr. Molina's guilty plea because, as even the Government agrees, his allocution satisfied the statutory elements. See Exhibit B, 11/08/2023 Hearing Trans., at 45

("MR. MAIMIN: … Your Honor definitely has the discretion to accept on the basis of what he said.") Whether he brandished a pellet gun or a firearm is not an element even of a *completed* Hobbs Act robbery, much less a conspiracy to commit a Hobbs Act robbery. *See* Exhibit B, 11/08/2023 Hearing Trans., at 18-19 (Government recitation of the elements). Such was the case in *United States v. Washington*, where the court held the district court abused its discretion in rejecting the defendant's plea to possession with intent to distribute narcotics because the defendant would not name his co-defendant as a co-conspirator, as the plea was not to conspiracy:

> In this case, however, the charge was distribution, not conspiracy. An individual is capable of committing this offense irrespective of the actions of any other person. The distribution can be perpetrated alone, and guilt is contingent upon the actions of no one but the defendant himself. Since Gedde did not in any way hedge his own guilt by asserting the innocence of Washington, and since Gedde was willing to proffer all facts necessary to establish the elements of a distribution offense, his plea had a sound factual basis as required by Rule 11.
>
> XXX
>
> We recognize that a trial court has broad discretion in disposing of guilty pleas. However, on this record, where the defendant attempted to (1) admit he was guilty of distributing cocaine, (2) admit to all facts necessary to establish the elements of the offense without proffering facts hedging his own guilt, and (3) knowingly and voluntarily enter the plea, the trial court's rejection was an abuse of discretion.

*United States v. Washington*, 969 F.2d 1073, 1078 (D.C. Cir. 1992).

The two cases in which the Second Circuit confronted a rejection of a plea based on a district court's belief that the defendant's allocution contained false statements are equally instructive. In *United States v. Navedo*, 516 F.2d 293 (2d Cir. 1975), the Second Circuit affirmed the late Judge Brieant's rejection of a guilty plea to

conspiracy to distribute cocaine because the defendant's allocution so minimized his relationship with his co-defendant that it cast significant doubt on a statutory element, *i.e.,* whether he knowingly entered into a conspiracy with his co-defendant. *Id.* at 297-98. Chief Judge Kaufman dissented, explaining that because other evidence was available in the record establishing the requisite elements, including the defendant's post-arrest statements to the Government and the evidence adduced at trial, it was error to reject the plea. *Id.* at 300 ("This is simply a case where a factual basis existed for the plea, but the trial judge failed to discover it because he did not fully grasp the facts and the applicable law."); *see also id.* at 298 ("It is clear, however, that a factual basis can be found in the very same evidence which led to Navedo's conviction after trial.")

Building on *Navedo*, the Second Circuit in *United States v. Severino*, 800 F.2d 42 (2d Cir. 1986), citing approvingly to Chief Judge Kaufman's dissent, noted that "where the court may look to other evidence in the recorded proceedings before it and determine that there is a factual basis for the plea, the plea should not be rejected." *Id.* at 46. Applying this logic, the *Severino* court affirmed the rejection of a guilty plea to possession with intent to distribute narcotics because the defendant's allocution was limited to admitting that he possessed 0.24 grams of cocaine. *Id.* at 46. This was problematic, explained the Second Circuit, because "there was no other evidence to which the court could look for verification, and certainly this amount of cocaine was sufficiently small to be consistent with personal use rather than distribution." *Id.* To accept the plea, the Second Circuit continued, "the court would have had to find

Severino a credible witness. The court did not find him credible, and there was ample basis in the record for its conclusion that Severino was not being truthful." *Id.*

The logical import of *Navedo* and *Severino* is that, in the Second Circuit, a plea (or plea agreement) may not be rejected based on a defendant's minimization (or falsehoods) of facts – even those relating to the statutory elements – if the same elements can be supplied by the record available to the district court.

Applying that logic to Mr. Molina, the Court would clearly be abusing its discretion in refusing to accept Mr. Molina's plea because it disbelieves Mr. Molina's explanation that the firearm was not real. This is so because, for one, whether or not Mr. Molina brandished a pellet gun or a fireman was of no relevance whatever to whether he admitted to conspiring to commit the Hobbs Act robberies, as the overt act requirement was satisfied by his acknowledgement that he entered the stores in New Milford and Mahopac, "stole" the phones, committed the robberies, and brandished a weapon, as well as by counsel's proffer that Molina used zip ties to secure the victims. Alternatively, as Chief Judge Kaufman explained in his *Navedo* dissent, adopted by the Second Circuit in *Severino,* this Court could – and in fact did – find that the trial proceedings fully established Mr. Molina's guilt of the conspiracy charged in the Superseding Information to which he has pleaded guilty. Stated otherwise, unless the Court, as a result of Mr. Molina's allocution, now disbelieves the trial evidence showing that Mr. Molina conspired to commit these robberies –

conspiracies to which he stands *convicted* – it would be abusing its discretion in rejecting his plea to the instant offense. *See Severino, supra*.[2]

### 2. In any event, the Court lacks a factual basis to conclude Molina was not being truthful when he said the weapon he possessed was a pellet gun.

Here, the Court is contemplating rejecting the plea because it did not believe Mr. Molina when he said he possessed a pellet gun and not a "firearm." The Court said it so concluded because Mr. Molina's codefendants had admitted to possessing firearms when they pleaded guilty, and because the Court believes the evidence at trial established that fact as well. *See* Exhibit B, 11/08/2023 Hearing Trans., at 35, 38. Neither of these rationales would support rejection of the plea agreement.

**a. The codefendants' pleas.** The pleas of the codefendants cannot bear the weight the Court ascribes to them. When Mr. Lauria pleaded guilty to the non-924(c) counts, on June 4, 2021, the Court similarly asked him what type of weapon he possessed, and Lauria repeatedly said it was a pellet gun. *See, e.g.,* Doc. 236 at 29: "Well, I know it was a pellet gun because I'm the one who brought it." The Government disagreed and maintained it was a "firearm" but also Lauria's allocution was nonetheless sufficient to support his guilty pleas to conspiracy and Hobbs Act violations, and the Court accepted the plea. *Id.* at 33 ("the Government would just note that we do not believe that the Defendant is being truthful in -- during his allocution about the nature of the guns. That being said, it is not an element of the

---

[2]    The Court's rejection of Mr. Molina's plea could not be considered harmless since it exposes him to a far greater sentence, in addition to additional counts of conviction. *See Rae-Beltran*, 457 F.3d at 703 ("Having incurred an additional conviction because his plea attempts were frustrated, the verdict resulting from the jury trial cannot stand[.]"); *United States v. Maddox*, 48 F.3d 555, 560 (D.C. Cir. 1995) (same).

crime that he's pleading guilty to, and so we believe there's a factual basis, but we just wanted to note that we don't believe the Defendant is being truthful about the nature of the weapons used."); *Id.* at 40 ("Mr. Lauria, because you have acknowledged that you are guilty as charged in the superseding indictment, because you know your rights and are waiving them, because your plea is entered knowingly and voluntarily and is supported by an independent basis of fact containing each of the essential elements of the offenses, I'm going to accept your guilty plea and adjudge you guilty of Counts 1, 2, 4, and 5 of the superseding indictment to which you have pled."). That Mr. Lauria, at a subsequent proceeding (Doc. 191), pleaded guilty to a 924(c) offense, this time allocuting to possessing a "firearm," does not change the fact that the Court accepted his plea to the non-924(c) counts, notwithstanding his insistence the gun was a pellet gun, because Lauria – like Molina – truthfully admitted facts establishing the offenses to which he pleaded guilty. The Court should treat Mr. Molina consistently with its treatment of Lauria.[3]

When Mr. Rodriguez pleaded guilty, *inter alia*, to a § 924(c) offense on April 1, 2021 (Doc. 125) there was no discussion of what a "firearm" is or is not, and so nothing in the plea transcript permits the conclusion that Rodriguez knew a pellet gun is not a firearm. In fact, he so argued when making an ineffectiveness claim in his direct appeal, but the Second Circuit concluded that the claim would need to be addressed through a § 2255 petition. *See United States v. Lauria*, No. 21-2304-CR, 2023 WL

---

[3]    On October 30, 2023, Lauria filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255 (Doc. 249), arguing he "did not understand the definition of a "firearm" for the purpose of 924(c) when he pled guilty. Under the logic of the jury instruction given at co-defendant Molina's trial, "a gun is a firearm," Movant believed a pellet gun was a firearm for the purposes of 924(c)."

3909796, at *1 (2d Cir. June 9, 2023) (summary order) ("We decline to consider this argument on direct appeal. As the Supreme Court has instructed, 'in most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance.'").

 **b. The trial evidence.** The Court's reliance on its impressions from the evidence admitted at Mr. Molina's trial likewise does not provide a basis upon which to reject the plea. There was ample evidence at Mr. Molina's trial to create a bona fide issue whether Mr. Molina possessed a pellet gun or a firearm, and the Second Circuit so held when it rejected the Government's argument that the charging error with respect to the definition of "firearm" was not harmless:

> In urging against vacatur, the government argues that the charging error was harmless because compelling evidence demonstrated that the guns brandished during the New Milford and Mahopac Robberies were firearms under the charged statute. The argument fails to persuade. No gun brandished during the New Milford or Mahopac Robberies was ever recovered. Thus, there was no opportunity for the jurors to see the guns at issue or for any expert testimony supporting their identification as firearms. Such expert evidence was not required to convict. Further, the jury was entitled to rely on eyewitness victim testimony about the guns brandished at them during the robbery. But the issue here is not the sufficiency of the evidence adduced to support conviction. It is the harmlessness of the charging error. Through cross-examination, Molina was able to develop some evidence suggesting that the weapons used in the robberies were pellet guns or guns otherwise not qualifying as firearms. *See supra* at 118–20. It is on this record that the instruction that "a gun is a firearm" caused confusion, precluding a confident conclusion that, absent the erroneous instruction, "the jury would have returned the same verdict beyond a reasonable doubt." *United States v. Gomez*, 580 F.3d 94, 101 (2d Cir. 2009) (discussing harmless charging error).

*United States v. Lauria*, 70 F.4th 106, 132–33 (2d Cir. 2023).

For these reasons, we respectfully suggest that this Court should accept Mr. Molina's plea. Should the Court disagree, we respectfully ask the Court to adjourn the proceedings to permit us to seek mandamus relief from the Second Circuit. *See In re Vasquez-Ramirez*, 443 F.3d 692, 700-701 (9th Cir. 2006) (Writ of mandamus was appropriate remedy for district court's refusal to accept guilty plea that satisfied requirements of Rule 11.)

## <u>Conclusion</u>

Mr. Molina has allocuted sufficiently to satisfying the requirements of Rule 11, including responding honestly to the Court's direction to name his accomplices. *See* Exhibit B, 11/08/2023 Hearing Trans., at 33. The singular point of contention concerns his insistence that the weapon he carried during the two robberies was a pellet gun — a fact of no consequence whatever regarding the sufficiency of the plea. Moreover, although the Court has stated its disbelief that the gun he possessed was a pellet gun, it makes perfect sense that it was a pellet gun, because it is commonly known that robberies committed with "real" firearms" carry much lengthier sentences. Undersigned counsel in fact has seen numerous other instances where witnesses – including Government witnesses – have testified they committed crimes with bb-guns or pellet guns. For example, in a case the undersigned recently tried, *United States v. Pippins* 19-cr-378 (EDNY) (PKC), one of the cooperating witnesses informed the Government, his "first robbery after being released from [redacted] was a [redacted] in Canarsie. [Witness] got a BB gun from [redacted] in Valley Stream." (redacted).

Additionally, Molina has every incentive to admit he had an actual firearm in order to salvage his five-year plea and not risk a resentencing of 16 years – three times as lengthy. He simply has made a personal decision to not say what he has repeatedly insisted he knows not to be so. Moreover, Mr. Lauria's statement at his first guilty plea proceeding rings true, when he told the Court, "Well, I know it was a pellet gun because I'm the one who brought it." And it is consistent– among other things – with the statement of Verizon employee Troy Consolvo, who when interviewed at the scene of the New Milford robbery by responding detectives Lynch and Guilbeault "stated that the gun sounded plastic." *See* 3520-20. Of course, there was evidence at trial to the contrary, but it was precisely for this reason that the Second Circuit found the instructional error to not be harmless.

For all these reasons, we respectfully ask the Court to direct the Government to file its memorandum by 5:00 pm Wednesday, and accept Mr. Molina's guilty plea entered November 8 pursuant to his agreement with the Government, or adjourn the proceedings to permit Mr. Molina to seek mandamus relief in the Second Circuit.

Date: November 13, 2023

Respectfully submitted,

Richard Levitt
Zach Segal
Levitt and Kaizer
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 480-4000
*Attorneys for Anthony Molina*

19